May it please the Court, Denise Schulman of Joseph and Kirshenbaum for the Plaintiff's Appellants. There is sufficient evidence in the record from which a jury could find that the plaintiffs were TXX employees and not independent contractors. Therefore, the District Court should not have granted defendants summary judgment motion. As the FLSA and New York Labor Law apply different but overlapping tests to determine whether a worker is an employee, I'll first discuss why plaintiffs could have been found to be employees under the FLSA. Tell us what ticked off for us, if you would, the issues of fact, the disputed issues of fact. I think one of the big ones is how plaintiffs' pay and routes were set. So plaintiffs say that TXX assigned them the routes. TXX says drivers chose what routes to do. And then the pay figures into that as well. Plaintiffs say that TXX set a per stop rate that they couldn't negotiate. Defendants have presented in their papers really three different versions of what happened. The driver declarations that they submitted say, I personally negotiated with various representatives. I'm having a little trouble. I'm sorry. Pull the mic right up to your mouth. Is that better? Much better. That's better. And maybe slow down a touch. Sure. The driver declarations that TXX submitted say, I personally negotiated with various representatives of TXX. The 30B6 deponent said that drivers bid on routes, although he didn't give any detail as to what that means or how it worked. And then there is the Mills declaration, who's an executive at TXX, who says a few different things in his declaration. He says— Can I drill down a little bit more as to the evidence? Because I'm concerned that both you and the appellee, you presented affidavits that I'm not sure would have been admitted if they were presented in the form of testimony from witnesses. For example, the Dean declaration that you're relying on, it says, TXX sets the rate of pay per stop. And I understand the magistrate judge's frustration in saying, that's kind of conclusory. Would a witness be able to testify to that on the stand? There were no specifics. There was no foundation for the knowledge. There was just a conclusion. And I'm not sure you're any more guilty of that than the appellee. But you had both sides submitting these kind of broad statements as to what they'd like the facts to be. And maybe you've got a factual issue because neither side gave us any real hard facts, but you don't have a factual dispute if there's no admissible evidence either. Well, I do think it's admissible to say TXX set my pay because Dean certainly has personal knowledge of how it was presented to him. I think what you could infer from that is that TXX basically told him, here's the route we have for you, and here's the pay we're willing to pay. If he was testifying at trial, could you say to him, Mr. Dean, who set your pay? And could he answer, TXX set my pay. And that's it? I think there would certainly be a follow-up question if he were testifying. Was there a follow-up question in his affidavit? It's just a declaration. I think the fitness of the record that you're identifying is the result of the limited discovery that we had in this case. But he's your client. Yes. You can get him to say whatever you think his story is. Yes. As I said, I did. Did he address whether he put in bids in his declaration? He says TXX set the rate and I could not negotiate. When I asked for more pay, they told me they'd find someone else to do the job. On the issue of discovery, did you put in a 56-F affidavit, or did you at any time ask for more discovery? There is no 56-F affidavit. You didn't even have 56.1 statements, right? That's right, because it was a converted motion for judgment on the pleadings, and the district judge just had us refile the original papers with some supplemental files as well. I didn't see in your briefs the point that you didn't have a full and fair opportunity for discovery. Right. We're not appealing that because we did not have the 56-F affidavit. So this is the record we have. We did attempt to serve a subpoena on one of TXX's customers that was quashed, and the reasoning was that. Did those subpoenas seek information relating to the independent contractor employee issue or to other things? The independent contractor employee issue. I think TXX's relationship with the customer, their control over the relationship with the customer, is highly relevant to whether the plaintiffs depended on TXX for the ability to perform services. Did you ask for any depositions other than the one 30B6 deposition you got? My understanding is it was just the 30B6. When there was a phone conference where the motion for judgment on the pleadings was converted to summary judgment, the district judge said, what discovery do you want? And on the spot, they said a 30B6, and that's what they got. And do you dispute that the plaintiffs were actually permitted to purchase additional vehicles and hire additional drivers to fulfill their routes? I agree with the concern expressed by my colleagues about the conclusory nature of many of the allegations, but I wondered in particular about that one, whether you disputed that claim by TXX. We do dispute it as a matter of economic realities. It's clear that there is no explicit prohibition on that, but under the FLSA's economic reality test, you have to look at what actually happened. And they did say in their declarations that any sharing of stops or routes had to be approved by TXX. When TXX can exercise that kind of control over their ability to expand, that weakens that factor. Also, there's little evidence in the record that drivers actually expanded their capacity that way. So what we know from the- So you'd say they were permitted to as a legal matter, but as a practical matter, they couldn't. Yes. Is that right? And I wondered about what your position is with respect to TXX's argument that a lot of the control that they exercise, such as it was, was due to regulatory requirements, and that shouldn't be weighed in the balance of the employee versus independent contractor determination. How do you approach that issue? Well, a couple of ways. First, I think that argument is contrary to this court's precedent in Brock versus Superior Care. Superior Care collected nurses' patients' notes, which were kept pursuant to state and federal law, and that type of control still weighed in favor of employee status. I think the important consideration is not why they're exercising the control, but that they do exercise it, that they have the ability to exercise it if they're- So basically, in a certain regulatory regime, a company that needed the services of other people would be incapable of having an independent contractor relationship because the regulators would require such close control that they would have to employ. Is that right? It could potentially be right. Every case would have to be looked at on a case-by-case basis to see what degree of control they're actually exercising. But I think the-I believe it was the Scantlin court said if customer requirements or whatever other reasons require you to exercise the control of an employer, then you need to hire employees. Thank you. All right. Thank you. Thank you. May it please the Court. I'm Jeffrey W. Pagano on behalf of TXX. Thank you. Could you also move closer to the microphone? Oh, I'm sorry. I'm sorry. Thank you. In the end, the issue is bidding, in my view. If you look at the affidavits submitted by the defendants and you look at the detail of the process within bidding and the process of growth, independent contractor by independent contractor, one having ten trucks undisputed, testifying in their affidavits or declarations that they bid, the bidding process was not denied by the plaintiffs. They just said, we didn't bid. Your affidavits, I guess it doesn't say I didn't bid, but the gist of the affidavit was they told me what I was going to be paid. No, Your Honor. No such affidavit? There's no such affidavit. What it says is the conclusory allegations were I worked under the supervision, direction, and control. No evidence. That is what they have to prove to show employee status. That's their affidavit. That's deemed. TXX determines the manner and means. That's the standard under Brock. That's the standard under the FLSA. There's no facts. So if you look at the facts of the plaintiffs. There did seem to be disputes of fact with respect to arrival time and how their routes were distributed on a given day and whether people were not further engaged or were terminated if they didn't follow certain practices and protocols, and particularly where it's the delivery of pharmaceuticals, a controlled substance, that is at issue. I'm kind of surprised that your client would be not exercising the level of control that would create an employment relationship. Could you speak to that? Well, Your Honor, that's an economic issue and a structural strategic issue, but the exercise of control, if you want to call it control, is control over the building. They gave them a window between 545 and 730 to show up to pick up the controlled substances. There's a lockdown. Now, showing up to pick up the pharmaceuticals is consistent with the shipping business. That is what they controlled, not when they entered within that time frame or how they entered. But one other thing. After 545, there was just another entrance. They didn't deny they couldn't come in after 545. Let me ask you about that. Mr. Sawney said in his declaration that when he arrived after 5.50 a.m., his staffs were given to another driver. If the time, if what they bid on could not have been delivered in time, there were times because you committed to the bid. This is bidding. This is not assigning. If the materials could not get there on time, it was put out to bid for others, and then you had to stand back and bid on other deliveries for that day. It wasn't reassigned. Could you lower your voice? Oh, I'm sorry. I apologize. It wasn't reassigned. It was about whether or not you were there on the committed time that you gave on your bid. So you're saying his affidavit doesn't create a factual issue. It just doesn't give the complete story. Is that it? That is exactly what's going on here. Keep calm. It's okay. I'm sorry. That is exactly what's going on here, Your Honor. I mean, for example, if deliveries are out of sequence, reprimands result. There's no facts. What reprimand? What is a reprimand? Well, Mr. Morris says the $20 was deducted from his pay for arriving 30 minutes late. That's something. In a business-to-business relationship. Now, there's no other, by the way, there's no other affidavit other than his that says that. So just assuming it. Isn't that evidence of control? No. That's evidence of consequence. Evidence of control that they, that TXX can dock drivers. No. Right or wrong for perceived failures to follow the directions, instructions, rules.  This is not like SEVA. This is not a Browning case where the company decides the schedule. This is a case where the evidence is overwhelming that the independent contractor businesses decide the schedule. They determine their commitments. There's a declaration from a driver saying that he was sometimes directed to work longer on weekends, complete more deliveries on weekends, that he, reprimanding him for deviating from a route. Isn't that evidence of control on the part of TXX? That is evidence of the contractor not fulfilling the commitments of the bid. That might be a completely reasonable interpretation of those facts. But on summary judgment, the Court is supposed to be strewing the facts in favor of the party opposing summary judgment. Your Honor, there is no timing. We don't know when this occurred. There's no description of what is a, quote, reprimand. That's your strongest point. And it gets back to the point I raised with your adversary. Is this admissible evidence at all? And it seems to me a lot of it isn't. But when you get down to someone who says, I was docked $20 when I arrived 30 minutes late, then you get to, well, how do you characterize that? You say it's part of the bidding process. It's also something that employers typically do with a derelict employee. And so the question is, which one is it? Your Honor, I don't know of any employer who docks somebody. They had no, they just don't pay them for the hours. In this case, the person's being paid for the stop. If the person doesn't show up on time to pick up the stop that he's committed to give, or perhaps, and this is, again, one person who says this, nobody else, perhaps doesn't deliver on time consistent with the commitment, then it's a failure of performance, a failure of result. It's the same example of someone painting your house, and they commit to Friday, and they show up on Monday. It's a good argument. The question is, is it an argument for the jury? Your Honor, it's an argument. It's not an argument for the jury under this context. It's because there's no specific facts around which you can come to any inference either way. So the evidence is excluded. There's just simply no context. We don't know what. The district judge exclude the evidence? Excuse me? Did the district judge reject the declarations on the grounds that they were not admissible? I do not believe so. The district judge considered them, right? He considered them fully. And what he did was he looked at the facts of the plaintiff's affidavits and then looked against the conclusory affidavits, which were being utilized to provide a result that was their burden in the case without the facts underpinning the events. Fact-finding? No, Your Honor. It's not fact-finding. It's saying what is in the record. What has been denied? Is there a dispute of material fact? Why wasn't a dispute of material fact as to what the program was in the morning about the arrival time, whether you had to arrive by a certain time or whether there was a range of times within which to arrive and how routes were then distributed? Because what they did was, and carefully in their affidavits, they said they have to arrive by 545. What they did was they neglected and did not dispute that after 545. Would you please calm down? I'm sorry. After 545. We are not a jury. We are ivory tower appellate judges. I apologize. Judge Hogan. I'm closer to it. Look, after 545, there's no dispute that there's another door to enter. They did not deny that, and the only difference is is that they had to sign in on a sheet. There's no denial of that. There's no denial that you could enter after 545. They're just saying I had to be there by 545 without denying that. What happens after 545? Were there no deductions for arriving late except if there had been a bid that was premised on a particular time and all this is set out in the affidavits? Your Honor, as to the $20, that's the only evidence that I know of in any record of TXX that has a deduction. I don't know what it's about. Like the district court said, he gave no particulars as to what the deduction was about. Was it about a day before stop that he missed? Was it about coming in late? It was not stated in the affidavit. And no other affidavit ---- What you're really saying is the district court, the magistrate judge particularly, did not expressly deem the affidavits inadmissible on the grounds that they were conclusory testimony, but what he said was I'm not giving these any weight because they are conclusory, which amounts to the same thing. Is that it? It's like, yes, Your Honor, and as the district court said, it's about semantics. What is a reprimand? What is a penalty? I mean, the idea that you can have that as a conclusory word to create employee status without suggesting the when, the where, the why, and the circumstances and who at TXX disciplined you, who gave you the penalty, when, why, that is why fundamentally I think the magistrate, what the magistrate said was there is no competent evidence to refute the specific evidence submitted by the plaintiffs as to the methodology of operation from day to day. I think ultimately the issue is a failure of proof, a failure to put evidence in that could be taken to a jury, that if at face value would a jury have the factual basis upon which to render a conclusion that the personnel were in fact employees. And as to the discovery, plaintiffs were afforded every opportunity for discovery. There's not been a question to that. So it's not a failure of proof in terms of discovery so much as it is a recognition that there are some cases. Roberts. It seems that this started off as a motion for judgment on the pleadings. It was converted. There weren't even 56.1 statements. I think if they had put in a 56F affidavit, there would have been good cause to allow some additional discovery. But in any event, you're out of time. Why don't you finish up? One thing. Plaintiffs submitted, although it was never done properly, if you read through the papers, they submitted their own motion for summary judgment. They took the position that they had the right factually for summary judgment and that discovery was complete. Thank you. We'll hear the rebuttal. Thank you. I'd like to just point out a few of the more detailed contentions that are in the declaration since there's been so much focus on that. Declarant Joe Morris stated that he was subject to a $20 deduction for being 30 minutes late. That is a specific discipline. Did he give any details as to when, why? Well, he said the why. I'm sorry? He said the why. What about the when? No, it does not say when. Is that the only specific example like that where someone was docked? That's the only example of a fine. Declarant Sonny said that he lost his stops when he was five minutes late to work. That's certainly not a situation where he was too late to make the stops on time, especially considering they're kept at the facility for hours. The argument is if you're late, the job is put out to bid so that someone who's there can have it. How do you respond to that? Well, it's certainly not clear that the jobs are actually put out to bid in that situation. The Mills Declaration says that if someone doesn't show up for their route, that vendors may bid on or agree to provide those services. Agree to provide sounds more like TXX offers these stops to a specific person, not that they say to all the people there, who wants to do this and how much are you willing to do it for? So I think even within defendant's declarations, there's an inconsistency about how work was assigned and about how pay was set. Declarant Derek Lewis says that a specific dispatcher named Jose told him that if he refused work, he would be put on standby, terminated, or suspended. That certainly indicates that the plaintiffs were not free to accept or deny work as they saw fit. They had to do it according to TXX's demand. Lewis is the one that had a death in his family, right? Yes. He asked for time off to one day off to attend the funeral, and he was told if you take that day off, you can't work here anymore. And these are the types of control and discipline that many courts have found way in favor of employee status and ultimately have to be decided by a jury. Thank you.